## GLENN L. MARTIN CO. v. UNITED STATES.

### No. 4375.

Circuit Court of Appeals, Fourth Circuit.

Jan. 9, 1939.

John T. Koehler, of Washington, D. C. (Semmes, Bowen & Semmes, of Baltimore, Md., on the brief), for appellant.

James E. Murphy, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and Bernard J. Flynn, U. S. Atty., and G. Randolph Aiken, Asst. U. S. Atty., both of Baltimore, Md., on the brief), for the United States.

Before PARKER and NORTHCOTT, Circuit Judges, and H. H. WATKINS, District Judge.

PARKER, Circuit Judge.

This is an appeal by plaintiff from an adverse judgment in a suit instituted under the Tucker Act, 28 U.S.C.A. § 41(20), to recover of the United States the sum of $7,737.32, alleged to be due under a government contract because of plaintiff's being required to pay social security taxes in that amount. Under the contract, which was executed June 25, 1934, prior to the passage of the Federal Social Security Act of August 14, 1935, 49 Stat. 620, 42 U.S.C.A. § 301 et seq., plaintiff agreed, for a stipulated price, to supply to the United States certain aircraft and aircraft materials. That contract contained the following provision: "It is expressly understood and agreed to by and between the parties hereto that the prices herein stipulated include any federal tax heretofore imposed by the Congress which is applicable to the material called for under the terms of this contract. If any sales tax, processing tax, adjustment charge or other taxes or charges are imposed or changed by the Congress subsequent to the date of this contract and made applicable directly upon production, manufacture or sale of the supplies called for herein and are paid by the contractor on the articles or supplies herein contracted for, then the prices herein stipulated will be increased or decreased accordingly and any amount due the contractor as result of such change will be charged to the Government and entered on vouchers as separate items."

Something over a year after the execution of this contract Congress enacted the Federal Social Security Act, 49 Stat. 620, the following provisions of which are pertinent here:

"Sec. 804 [§ 1004]. In addition to other taxes, every employer shall pay an excise tax, with respect to having individuals in his employ, equal to the following percentages of the wages * * * paid by him after December 31, 1936, with respect to employment * * * after such date:

"(1) With respect to employment during the calendar years 1937, 1938, and 1939, the rate shall be 1 per centum."

"Sec. 901 [§ 1101]. On and after January 1, 1936, every employer * * * shall pay for each calendar year an excise tax, with respect to having individuals in his employ, equal to the following percentages of the total wages * * * payable by him (regardless of the time of payment) with respect to employment * * * during such calendar year:

"(1) With respect to employment during the calendar year 1936 the rate shall be 1 per centum:

"(2) With respect to employment during the calendar year 1937 the rate shall be 2 per centum."

"Sec. 902 [§ 1102]. The taxpayer may credit against the tax imposed by section 901 [section 1101 of this chapter] the amount of contributions, with respect to employment during the taxable year, paid by him (before the date of filing his return for the taxable year) into an unemployment fund under a State law. The total credit allowed to a taxpayer under this section for all contributions paid into unemployment funds with respect to employment during such taxable year shall not exceed 90 per centum of the tax against which it is credited, and credit shall be allowed only for contributions made under the laws of States certified for the taxable year as provided in section 903 [section 1103 of this chapter]." 42 U.S.C.A. §§ 1004(1), 1101(1, 2) 1102.

Following the passage of the Social Security Act, plaintiff paid social security taxes in the amount of $7,737.32 for the years 1936 and 1937 on expenditures for labor employed in producing the supplies called for by the contract. Of this amount, $5,616.06 was paid as tax on sums paid to laborers engaged solely in the production or manufacture of these supplies. The remainder represents the portion of the tax paid on disbursements on account of "overhead" labor, and allocable to this contract, i. e. disbursements to employees who were engaged in production under other contracts as well as under the one here involved; and there is no contention that this allocation was

not properly made in accordance with correct accounting principles. Of the total amount of the taxes paid, $6,943.29 was paid to the State of Maryland and credit on the federal tax was allowed therefor under section 902 of the Act quoted above.

The court below found for the government on the ground that the taxes paid by plaintiff were not "applicable *directly* upon production, manufacture or sale" (23 F. Supp. 262, 264); and the plaintiff, having preserved its right of review by the presentation of appropriate prayers and exceptions duly entered, brings this appeal, contending that it is entitled, on the undisputed facts, to recover the amount sued for as a matter of law. The government contends that the judgment denying recovery should be affirmed, and that, in any event, plaintiff is entitled to recover no more than the amount of the taxes actually paid to the federal government, not including the part of the levies paid to the State of Maryland. Two questions, therefore, are presented for our consideration in interpretation of the contract sued on: (1) Whether the social security taxes imposed by the Act are "taxes or charges" made directly applicable upon production or manufacture; and (2) if so, whether that portion of the taxes paid to the State of Maryland and credited on the amount due under the federal Act are taxes "imposed by Congress" and "paid by the contractor" within the meaning of the contract. We think that both of these questions must be answered in the affirmative.

■■■ The taxes imposed by the Social Security Act are excise taxes and are so termed by the Act itself. They are imposed upon the relation of employment as one of the relationships embraced in the carrying on of business; and are sustained on the principle that "the power to tax the activities and relations that constitute a calling considered as a unit is the power to tax any of them. The whole includes the parts". Steward Machine Co. v. Davis, 301 U.S. 548, 581, 57 S.Ct. 883, 888, 81 L.Ed. 1279, 109 A.L.R. 1293; Helvering v. Davis, 301 U.S. 619, 645, 57 S.Ct. 904, 81 L.Ed. 1307, 109 A.L.R. 1319. And because the tax is one upon the relation of employment, it is argued that it cannot be a tax "applicable directly" upon production or manufacture. We think, however, that, not this conclusion, but the contrary, is the one which logically follows. As the whole is the sum of all its parts, a tax applicable directly on one of the parts is necessarily applicable directly on the whole which comprises it. The manufacture or production of the supplies called for by the contract necessarily involves the employment of labor and the use of materials; and a tax applicable directly upon either is a tax applicable directly upon the manufacture or production itself. No tax more directly applicable upon manufacture or production can be conceived, we think, than a payroll tax measured by wages paid to labor engaged therein.

It is argued that the contract should be interpreted as contemplating only taxes imposed by Congress on the production or manufacture of the particular articles called for by the contract and "measured by the number of units produced or sold or by weight or by some other unit of use or manufacture". We see no reason, however, to thus restrict the language used, which contains no provision that the tax imposed must be measured in any such way, but is of the broadest possible scope, including "any sales tax, processing tax, adjustment charge or *other taxes or charges*". (Italics supplied.) The only limitation is that such taxes or charges be "applicable directly" upon production, manufacture or sale; and, as we have seen, a tax "applicable directly" upon the employment of labor engaged in manufacture is "applicable directly" upon the manufacture or production in which that labor is engaged.

The language of the contractual provision is so clear, we think, as not to justify our looking beyond its plain meaning. If, however, we look to the purpose and intent of the parties, the provision was evidently inserted to protect the contractor against loss arising from the imposition of new or additional federal taxes, which would increase his cost of production but could not be anticipated with any degree of accuracy; and no tax could more clearly fall within the class of taxes which it was the purpose to provide against than an employment tax measured by the wages paid to produce the articles which the contract called for. The taxes, it will be noted, are to be applicable directly upon the "manufacture, production or sale" of the articles, not directly upon the articles themselves; and this requirement of directness is satisfied where the tax is imposed on some essential element of "manufacture, production or sale" in such way as to constitute a direct burden upon same. It excludes, of course, such taxes as do not directly burden "manufacture, production or sale", such as income, excess profits and capital stock taxes.

The learned judge below was of opinion that the tax operated "indirectly through overhead expense rather than directly, as would increased wages paid for the work done". But a payroll tax measured by the wages paid to produce an article burdens production and increases the cost thereof to the same extent and in substantially the same way as increased wages. If the employer must pay three cents tax on every dollar paid in wages for the production of an article, the expense of producing the particular article is increased by just that much; and upon no possible theory can it be said that the tax is an investment of a permanent nature which would justify its being charged to overhead. And the settled accounting practice is that such taxes should be charged to current expense and not to overhead. Cole, "Accounts; Their Construction and Interpretation" pp. 145, 226, 227; Neuner, "Cost Accounting" p. 196; N. A. C. A. Bulletin vol. XVIII, No. 24, Aug. 15, 1937, pp. 1376–1377.

■ Coming to the second question, i. e. whether the portion of the tax paid to the State of Maryland and credited against the tax due under the Act to the federal government falls within the meaning of the clause of the contract under consideration, it is to be noted that this portion, as well as the remainder, falls squarely within the language used. The entire amount of the tax was "imposed" by Congress and was "paid by the contractor". That a part of it was paid with the consent of Congress to the State of Maryland and credited against the amount which would otherwise have been due under the Act, would seem to be immaterial. A very similar question was before the Court of Claims in Batavia Mills, Inc. v. United States, decided June 1, 1937, but unreported. There, a processing tax on cotton yarn had been paid by the manufacturer of cotton cloth to the seller of the yarn pursuant to the terms of a contract under which the yarn was purchased. The manufacturer of the cloth had sold it to the government under a contract providing that the price should be increased by the amount of any new taxes made applicable by Congress to the supplies to be furnished after the date of the bid. In holding that the amount of the tax so paid might be recovered by the manufacturer of the cloth, who had not paid it to the government but to the processor of the yarn, the court said: "This is not a suit for the refund of taxes paid but an action based upon the provisions of a contract. The provisions of the law with reference to refunds of taxes collected under the Agricultural Adjustment Act have therefore no application. All of the matters necessary to establish plaintiff's claim under the contract are shown. After the contract was entered into a new and additional tax was imposed on the manufacturer from whom the contract supplies were purchased by plaintiff. The tax was passed on by the manufacturer and under the terms of plaintiff's contract with the manufacturer it was obliged to pay it. Defendant expressly agreed that the amount of the tax should be added to the purchase price. The right of plaintiff to recover the amount so paid is clear and judgment will be rendered accordingly."

The Federal Social Security taxes were imposed by Congress as part of a comprehensive plan in which the states were expected to participate. That the states might be induced to do this, it was provided in the Act that the taxpayer might credit against the tax imposed by it any contributions paid by him into a state unemployment fund, to an amount not exceeding 90% of the amount of the tax under the federal Act. This, of course, was no more than permission to the taxpayer to pay to the state 90% of the tax imposed by the Act and to credit same as a deduction on the federal tax; and where the plaintiff availed itself of this privilege, paying a portion of the tax imposed to the state and claiming credit therefor under the Act, we think that it comes within the protection of the spirit as well as the language of the clause in the contract here under consideration. Even though the taxpayer was under legal obligation to pay the state tax to the state, the fact remains that that tax was imposed in connection with the general system brought into being by the federal Act and payment thereof was recognized as satisfying 90% of the obligation imposed by the federal tax. See Sections 903 and 904, 42 U.S.C.A. §§ 1103, 1104; Steward Mach. Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293. If the state had not imposed a tax and established an unemployment fund complying with the requirements of the federal Act, the entire amount of the federal tax, without credit, would have been collected by the federal government and plaintiff would unquestionably have been entitled to recover same under the contract provision. We think it is in no worse plight because the state has seen fit to comply with the provisions of the federal Act and thus receive 90% of the tax that it

imposes. The clause of the contract was intended to protect plaintiff against new taxes to be imposed by the federal government. It should not be denied this protection because that government permits a portion of the taxes imposed to be paid to the states under a general scheme for state and federal co-operation.

For the reason stated, the judgment appealed from will be reversed.

Reversed.